and that is case number 4110145 and for the appellant we have Mr. Oller and for the appellee, Luke McNeil. Mr. Oller. May it please the court, counsel. I apologize for being a little slower these days. At 70 you don't race up to the dais. The case before us this morning, I will be brief, unlike the use of that word in all too many legal contexts, and suggest to the court that the overview should be that five years is an awfully long time for 0.8 grams of cocaine delivered to a cousin, albeit with a sad record of some minor probation violations in the wake of it. I do point out from page three of our brief, the quote from the court is, the judge said, she cited multiple petty traffic tickets over an 18 year period and found, quote, no new substantive convictions except for these probation violations and the resisting charge. That was the basis for one of the revocations. And she says, the court found the appellant had revocation three times, once for failing to report, once for committing, resisting, and now for testing positive. But she went on to say, I am sentencing her for the original offense and not for the revocations. Presumably taking into account the revocations extended out and had some consequence on her. But if that's to be taken as what the court meant when she said it, my client got five years for 0.8 grams. Now, I've done an unconventional thing and I assume at the age of 70 that I wanted to just plain tell it the way I see it at one point. I've cited to the statistics of the Department of Correction for average sentences. I know you don't want to open the Pandora's box of comparing people's sentences, but this isn't saying last week in Champaign somebody got X for Y. This is the published reports of the DOC finding that the average for this category of felony is exceeded by well over a year by this sentence. And certainly the court knows that the 0.7 grams is about as minimal as you can get and still be within the category. So, what I'm suggesting to the court is that the judge says what she means and means what she says and then we take a look at the next thing she says in the same sentencing. She then cited a supposed event that counsel cannot find in the record. She says, quote, and then again in November on two separate occasions Ms. Timpone chose to sell cocaine to an undercover police officer. That didn't happen. There's no record of it. I suggest to the court it never happened. And what it means is the judge had in her mind that this was a two delivery case when she gave her five years. Let me suggest, it's hard when you read a record, well it's hard as a court reporter preparing a record to determine where you should put the periods. And let me read this to you in the way I think it probably was said. For the underlying offense, the underlying offense was almost four years ago as of today or yesterday and then again in November. On two separate occasions Ms. Timpone chose to sell cocaine to an undercover officer. So she wasn't saying two separate occasions in November. She was just saying the underlying offense was almost four years ago and then again in November there was another one on two separate occasions. She wasn't saying two separate occasions in November. But there was only one occasion no matter how you count. It was the original one. There was no accusation of delivery as part of this violation of probation. No matter where you punctuate it, she was only convicted of selling, giving one time. And one time only is all there is in this record. What did she do in November? She violated the three, well you're reading of it, she violated the three that I already read to you. She had her third up for revocation, once failing to report and follow through, second time resisting, and this third time for dropping dirty. That's it. She was charged with two counts of unlawful delivery in November of 2006. Yeah but those were two of the same offense and she only pleaded to one. So there's only one conviction for hand-to-hand delivery. I do take your point about the punctuation of court reporters. I'm not going to burn my 20 minutes so please indulge me in this. In front of Judge Morgan, perhaps 40 years ago, I appeared and argued from the printed transcript of a previous hearing taken by Howard Broom who was a long time, last of the handwriting, short-hand reporters. And I quoted Judge Morgan in finding against me said, the record imparts verity, imparts verity, which Howard then transcribed, the record imparts very, illustrating your point. But I don't really see that no matter how you punctuate this when it comes out where the record supports more than one, well the conviction, the underlying conviction and no further accusations of a hand-to-hand sale. But in sentencing, can't the judge consider conduct that she didn't plead guilty to? Well she didn't consider that. That's the best answer to that one. She sets out what she did consider. Well I thought she had been charged with two sales at one point in time before she pled. Wasn't one sale October 29, 2006? Well they were both sales arising from the same transaction, two counts. So it's not like two separate transactions. I thought they were two separate dates. I don't believe so. But if even so, were that to be the case, Your Honor, you'd be on a very, very slippery slope taking into account things that nobody ever pleaded to or was convicted of as part of the sentencing. I don't see how in the world you can do that and comport with due process. You haven't had any proof of that. Merely an accusation by the state that never went to trial, never had a plea to it. She only pleaded to one count. At a sentencing hearing, the court's allowed to consider a broad range of evidence, not just conviction. There's plenty of law that if she were to have gone back and wanted to consider something that happened in 2006, she had to have hearing on it. This court has even expressed this in a recent case that's come out since the briefing of this one, in which you reversed Judge Ford, I can't remember the name of it, but it's a July case, and said that when you're taking the statute that governs revocation, you're entitled to be informed of the fact that we're going to prove something up and have a hearing on it. None of that ever happened under your theory that she's dipping back into the ancient past for another charge that was never brought to trial and never anything except dismissed as part of the plea deal. Now, I don't see why you want to open a Pandora's box to do that than any court at any time could consider anything that the police or the prosecutor had ever decided to charge and dismiss, or ran out on a 120, or I don't know, anything, which is going to expand your time in court enormously and violate due process as well as the statute, in my opinion. But at any rate, as far as this is concerned, the stumbles and falls are real, but if she got more than the minimum for this class of offense, which is a three, that's still a heck of a lot of time. Were it to be the case that this were diminished to the minimum, we can't complain. I think that's the far end of reasonable, but it's still within the range. But given the court's misunderstanding that there are two hand-to-hand sales by this lady, which there weren't, to give her a five for failing to report and the other probation violations, including dropping dirty, is just beyond the pale and should be reversed. Thank you. Thank you, counsel. We still have rebuttal. Mr. McNeil. May it please the court. Counsel. Counsel. In sentencing defendant, the trial court considered the fact that this was the fourth time she was being sentenced on this conviction. The other three times she was sentenced to probation, each time she violated that probation. The third sentencing hearing, also the trial court specifically told defendant that this would be the last time she would receive probation and that the prison sentence that would be issued if she violated that probation would not be a minimum. However, defendant did violate probation again for selling cocaine, which was the drug that she was convicted for, not for selling cocaine. So you're saying that the third time that probation was violated, trial court already determined that if there was another violation, she would be going to prison and it would not be the minimum sentence? That's what the trial court told her at the third hearing. Is there anything improper about that? I think it was more of a stern word, stern warning. I mean, it was the, again, the third time she violated the probation, so maybe the, obviously the probation didn't have enough teeth to it to deter her from not committing crimes or staying off drugs. Do you concede that the trial court took into consideration two deliveries when there was actually only one? No. Why not? I'm going to read you the whole full statement. For the underlying offense, the underlying offense was almost four years ago as of today or yesterday. And then again in November, on two separate occasions, the defendant chose to sell cocaine to an undercover police officer. Next sentences are important. The sale that led to her conviction was .8 grams of cocaine that she sold from her residence to a confidential source. Actually, it was monitored by the police in a controlled body. So the last two sentences really correct her misapprehension from reading the record. As Mrs. Pope said, Justice Pope said, the record states that there was one charge in October of 2006, one in November of 2006. Reading the whole record, which I'm presuming the court was doing there, they misapprehended that it was actually to an undercover police officer. They then corrected themselves by saying the sale that led to her conviction was .8 grams of cocaine that she sold from her residence to a confidential source. Note that they said sale. They didn't say the sales. It was singular. And again, singular in the next sentence actually is monitored by the police in a controlled body. I think the word actually, again, this is a cold record, but the word actually shows that the trial court is correcting their last misapprehension of the fact from reading the underlying offense, the charges to the underlying offense. So again, of course, this not only corrects the fact that the defendant didn't sell to an undercover police officer, but in a controlled body, it also corrects the fact that the underlying charge was a single act. Again, all the words used in the last two sentences are single, the sale that led to her conviction. Actually, it was monitored by the police in a controlled body, not they were monitored by the police in a controlled body. So the trial court did not rely on misapprehension there being two underlying charges or underlying convictions here. The trial court corrected any misapprehension of fact in the last two sentences of that full statement. And again, the sentencing range was between three and seven years. This was directly in the middle. I guess you could say the defendant at least had some sort of fair notice that yet another probation violation, there's a very good chance that she would be sent to prison and not a minimum sentence, especially since the court said that very thing to her the last probation she had. And the court also noted that it was sad that the defendant's positive drug drug came from her son's delinquency case where she was required to do random drug tests. So ultimately the trial court properly took these factors into consideration, gave the defendant a sentence that was directly in the middle of the statutory limits. And it was necessary to deter the defendant in similar situations from perpetually violating probation with no consequences. And the defendant didn't, the trial court didn't abuse its discretion in sentencing the defendant. Do you agree with Mr. Eller that if the court did consider the dismissed charge that would be improper unless there was some evidence put on regarding... Correct, if it was just a charge it would be improper, but again I think the full statement clearly shows that that wasn't taken into account. And if there are no more questions... Seeing none, thank you, rebuttal. I think counsel adequately dealt with the questions raised by Justice Pope about a wide range of sentencing factors that could be taken into account. The one you can't take into account is that somebody committed a crime when they remain innocent until proven guilty of that crime. I guess I didn't mean to imply that. I was a prosecutor for seven years, so I know how to do a sentencing hearing that you can bring in evidence of other charges. And I didn't know if there was maybe an admission in the PSI relating to that other charge or not. No, there wasn't. I've been on the other side of the fence too, so I appreciate your comment. The only thing I can say is that it's really abundantly clear from both comments of counsel and the record that there was only one sale, delivery as we characterize it, to a relative who was there trying to, as we used to say, play old maid. There was a child's game when I was young, so I'm sure it's in deep history now, but it was called old maid. And the only way that children could win if they were dealt the old maid was to try to get someone else to take the old maid out of their hand and relieve them. That seems to be about what happens in most of these drug cases where you have an old maid, you have to pass it on, then you get sentencing credit or deals or whatever. And I suggest that's what we have here. And certainly had no overtones with commercial transactions. She was never in the 17 or so traffic stops found to be drugged, in possession of drugs, or even a DUI. So we don't have a chronic hard-nosed criminal here, despite the last name, which might be popular on TV. It's just a pizza family and not anything stronger than that. So as far as the five years for a .8 gram, the judge said that's what she's sentencing her on. The other stuff, the violations, were dealt with as we went. It's just too much, particularly with the least confusion in the judge's mind. Is it too much to ask a judicial officer to correctly speak what she thinks, or even as counsel wants to characterize it, to correct what she has misstated by using the words, pardon me, I misspoke, to clarify for your honors as well as for the defendant? I think that's the bare minimum that we can expect. And the ties go to the defendant on this one as far as what the judge had in her mind because she didn't really tell us. For that reason, I ask that it be reversed. She's already served, I think, two-plus, almost three years of this, and you're not handing anybody a bag of Halloween candy here to reverse her conviction. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.